UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
ARRELLO BARNES,

                              Petitioner,

           -against-

JOHN BURGE, Superintendent, Auburn
Correctional Facility, et al.,

**MEMORANDUM & ORDER**

03-CV-1475 (NGG)

                              Respondent.
------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Petitioner pro se Arrello Barnes ("Petitioner") brings this application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his conviction rendered in 2000 in Supreme Court, Queens County for two counts of Murder in the Second Degree and two counts of Robbery in the First Degree. For the reasons set forth below, his petition is DENIED.

**I.      Background**

This case arises out of a shooting incident that occurred on November 7, 1996, in which Brian Boyd ("Boyd") was robbed and murdered on the corner of 147th Street and Rockaway Boulevard in Jamaica, Queens.

Hannah Krider ("Krider"), a witness at trial, testified that at around 10:30 on the morning of that day, she was in a store near the corner of 148th Street and Rockaway Boulevard when she heard a gunshot. (Trial Tr. at 396-97.) As she left the store and began crossing Rockaway Boulevard, she saw two men running at her, one of whom was holding a gun. (Id. at 398-99.) At trial, Krider identified Petitioner as the man who was holding the gun, which she described as a long silver gun. (Id. at 402-03.) Krider also testified that on the day of the shooting, she

1

identified Petitioner from two photographs of two different people that the police showed her, and that she later identified Petitioner in a lineup held on January 24, 1997. (Id. at 436, 409-11.)

Detective Edward Hendrickson ("Detective Hendrickson") testified at trial that Petitioner gave a statement after he was taken into custody, which the Detective transcribed and the prosecution introduced into evidence at the trial. (Id. at 622-24.) Petitioner stated in this statement that on November 7, 1996 he was with his cousin Danny Barnes, a.k.a. Fort, when they heard that a "kid named Killer" who had earlier robbed Fort had been spotted. Fort went to get two guns, one which he kept, and one which he gave to Barnes. After a brief and expletive-filled argument, Fort shot "Killer." The bullet passed through "Killer" and hit Petitioner in his right chest. Petitioner told Detective Hendrickson that Fort still had the gun that he used, as well as two other guns. (Id. at 624-26.)

The prosecution introduced into evidence two photographs of Petitioner which Detective Hendrickson took, which showed a "welt or bruise to his right chest." (Id. at 631.) Detective Hendrickson also testified that the same night that he questioned Petitioner, he drove up to Binghamton, where Petitioner said his cousin lived. In Binghamton, Detective Hendrickson, with other police officers, arrested Petitioner's cousin and found in his apartment a silver gun and a gold pendant. (Id. at 646.) Other testimony at trial established that Boyd had been wearing the gold pendant the day of the shooting and that the silver gun that was recovered from Petitioner's cousin had been used to shoot Boyd. (Id. at 378, 575.)

## II. Procedural Background

In April, 2001 Petitioner filed an appeal in the Appellate Division of the Supreme Court, State of New York, in which he claimed that evidence of Krider's identification of him in a lineup should have been suppressed. On December 17, 2001 the Appellate Division affirmed

Petitioner's judgment of conviction. People v. Barnes, 289 A.D.2d 413 (2d Dep't 2001). The Court of Appeals denied Petitioner leave to appeal on April 2, 2002. People v. Barnes, 98 N.Y.2d 635 (2002). On December 5, 2002, Petitioner filed a pro se motion to vacate his conviction pursuant to New York Criminal Procedure Law Section 440.10, which was denied on May 1, 2003. The Appellate Division denied leave to appeal on November 5, 2003. On December 1, 2003, Petitioner filed a second pro se motion to vacate his conviction, which was denied on January 23, 2004. By motions dated March 23, 2004 and April 23, 2004, Petitioner filed a third pro se motion to vacate his conviction, which was denied on June 8, 2004.

Petitioner's conviction became final, and the 28 U.S.C. § 2244(d) statute of limitations began to run, on July 1, 2003, ninety days after April 2, 2003, when the Court of Appeals denied him leave to appeal the Appellate Division's affirmance of his judgment of conviction. See Williams v. Artuz, 237 F.3d 147, 150-51 (2d Cir. 2001). The instant petition, filed on March 24, 2003, is timely, as it was filed even before the statute of limitations began to run.

### III. Petitioner's Claims

Petitioner brings five claims. First, he claims that no probable cause existed for his arrest and therefore his statements, the identifications, and the physical evidence should have been suppressed as fruit of the poisonous tree. Second, Petitioner claims that the photographs initially shown to Hannah Krider were impermissibly suggestive, as she was shown photographs of just two different people. Third, Petitioner claims that his Fifth and Sixth Amendment rights were violated when Detective Hendrickson questioned him even though he knew that Petitioner had been arrested on an unrelated felony charge on which he was represented by counsel, and even though Petitioner expressly asked to call his counsel. Fourth, Petitioner claims that hearsay testimony at the pre-trial Wade hearing regarding a statement of an alleged eyewitness violated

his due process rights. Fifth, Petitioner claims that his trial counsel's waiver of a pre-trial Mapp hearing denied Petitioner his right to the effective assistance of counsel. Petitioner also claims, in an amendment to his petition filed on January 10, 2005, that his trial counsel was ineffective for failing to interview and/or call at trial six witnesses prepared to offer exculpatory hearsay testimony on Petitioner's behalf.

### A. The Majority of Petitioner's Claims are Procedurally Defaulted

Federal courts "do not review arguments procedurally defaulted in state court if the finding of default constitutes an 'independent and adequate state ground' for the state court's decision." Brown v. Greiner, 409 F.3d 523, 532 (2d Cir. 2005). This rule applies when a "state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." Green v. Travis, 414 F.3d 288, 294 (2d Cir. 2005) (internal citation omitted).

In the New York State Supreme Court's May 1, 2003 decision on Petitioner's first motion to vacate his sentence, the court expressly relied on a procedural default as an independent ground for denying the claims raised by Petitioner in the motion considered there, which included all the claims considered here except for the ineffective assistance claim relating to the exculpatory hearsay testimony.

With respect to Petitioner's claims one through four, the court held that these claims should have been raised on direct appeal. Barnes, 289 A.D.2d at 413. The court therefore dismissed them under N.Y. Crim. Proc. 440.10(2), which provides that the court must deny a claim raised in a motion to vacate when the facts underlying the claim were present in the trial record but the defendant unjustifiably failed to raise the claim on appeal.

4

The Supreme Court also held that Petitioner's ineffective assistance claim relating to the Mapp hearing was defective because the statements underlying the claim were not contained in a sworn affidavit. The court therefore dismissed this claim under N.Y. Crim. Proc. 440.30(4), which requires a motion based on facts to contain sworn allegations substantiating those facts. Barnes, 289 A.D.2d at 413.

Procedural default may be avoided when a petitioner shows (1) cause for the default and prejudice or (2) "that failure to consider the claim will result in miscarriage of justice, i.e., the petitioner is actually innocent." Sweet v. Bennett, 353 F.3d 135, 141 (2d Cir. 2003); see Marrero Pichardo v. Ashcroft, 374 F.3d 46, 53-54 (2d Cir. 2004) (miscarriage of justice would occur as a result of procedural default of claim in motion challenging removal order that was "virtually certain to succeed if considered on appeal").

Petitioner has not established any cause for his procedural defaults, and he also cannot establish, given the overwhelming evidence of his guilt – particularly, his confession – that he is actually innocent of the murder of Boyd. These five claims are therefore procedurally defaulted and may not be considered by this court.

The court notes that in any case, these five claims are meritless. First, under Stone v. Powell, 428 U.S. 465, 482 (1976), Petitioner's challenge to the suppression of evidence may not be considered because he had a full and fair opportunity to litigate his Fourth Amendment claims before trial. See Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992); (Suppression Hearing Tr., December 16, 1997).

Second, Petitioner's challenge to the allegedly impermissibly suggestive photo array fails because the trial court made a reasonable determination of fact, entitled to deference under 28 U.S.C. § 2254(d)(2), that the six African-American males in the photo array all had a similar

5

appearance, and because Petitioner has not shown that the manner of presentation of the photo array was improper.[1] See United States v. Maldonado-Rivera, 922 F.2d 934, 973 (2d Cir. 1990); (Suppression Hearing Tr. at 25-26).

Third, Petitioner's claim that he was questioned even after he asked to speak to counsel is totally unsupported by the record. Detective Hendrickson testified at the suppression hearing that Petitioner never asked to speak to a lawyer, and a Miranda card on which Petitioner agreed to answer questions without an attorney present was admitted into evidence. (Suppression Hearing at 37, 83.) In addition, Petitioner's claim that he was improperly questioned by Detective Hendrickson even though the Detective knew that he was represented by counsel in an ongoing criminal matter has no basis in federal law. See McNeil v. Wisconsin, 501 U.S. 171, 175 (1991) (holding that Sixth Amendment right is offense-specific and that a defendant to whom the right to counsel has attached for one offense may be questioned about other criminal conduct).

Fourth, Petitioner's claim regarding hearsay statements improperly admitted at the pre-trial Wade hearing must be denied because hearsay is generally admissible at pre-trial hearings to determine the admissibility of evidence. See United States v. Matlock, 415 U.S. 164, 172-73 (1974).

Fifth, Petitioner's claim that his counsel was ineffective for waiving Petitioner's right to a pre-trial Mapp hearing has no merit because Petitioner lacked standing to challenge any alleged Fourth Amendment violations. No evidence was seized from Petitioner; the physical evidence was seized from his cousin. Petitioner had no standing to object to the seizure of evidence from his cousin. See Rakas v. Illinois, 439 U.S. 128, 143 (1978 (a defendant has no right to have

---

[1] Krider's testimony at trial that she was only shown photographs of two men was mistaken. The evidence introduced at the pre-trial suppression hearing, including the actual photograph that she was shown, establishes that she was shown photographs of six different men. (Supression Hearing Tr. at 25-26.)

evidence suppressed on Fourth Amendment grounds unless the breached privacy expectation was his own rather than that of a third party). Petitioner's counsel cannot have been ineffective for failing to press Petitioner's right to hold a futile hearing. See United States v. Abad, 514 F.3d 271, 276 (2d Cir. 2008) ("counsel could not therefore have been ineffective for failing to make a motion that would have been futile").

B.  Petitioner's Ineffective Assistance of Counsel Claim Is Meritless, Even if not Procedurally Defaulted

Petitioner's remaining claim is that that his counsel was ineffective for failing to interview several witnesses who told counsel that they would testify that Petitioner's cousin told them that Petitioner was not involved in the murder. This claim was denied by the New York Supreme Court on June 8, 2004 in its ruling on Petitioner's third motion to vacate his sentence. The court did not rely on procedural default as a grounds for denying Petitioner's claim. Instead, it noted that "[t]he defendant's motion with regard to adequacy of his trial attorney has previously been determined. In any case, this court finds that his trial attorney was more than merely adequate and represented the defendant zealously and professionally." (June 8, 2004 Slip Op., Indictment No. 4183/1996 at 2.) Because the state court did not expressly rely on Petitioner's procedural default, if any, the court will not deny this claim on this basis.

This court will therefore consider the merits of Petitioner's claim, giving due deference to the state court's determination under 28 U.S.C. § 2254(d)(1):

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

In order to establish ineffective assistance of counsel, a petitioner must show that his "counsel's performance was deficient" and that "the deficient performance prejudiced the

7

defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). Representation is ineffective if "counsel's representation fell below an objective standard of reasonableness." Id. at 688.

The witnesses at issue were purportedly going to testify that Petitioner's cousin told them that he committed the murder of Boyd on his own, that he had no knowledge of Petitioner's presence at the scene of the crime that day, and that he shot Petitioner by accident as Petitioner was coming out of a store. (Petitioner's March 23, 2004 Motion.) Even if it were true that these witnesses did come forward to Petitioner's counsel, counsel would have reasonably found their testimony to be preposterous and therefore not helpful to Petitioner. In any case, their testimony would have been inadmissible as hearsay. Counsel therefore certainly acted reasonably in declining to interview or call these witnesses at trial. See Sacco v. Cooksey, 214 F.3d 270, 274 (2d Cir. 2000) (trial counsel's decision not to call witnesses was objectively reasonable, given the serious potential downside of introducing their testimony). Petitioner's claim is therefore denied.

## IV.   **Conclusion**

For the reasons stated above, the petition for habeas corpus is DENIED. A certificate of appealability shall not issue. The Clerk of the Court is directed to close the case.

SO ORDERED.

Dated: Brooklyn, New York
October 17, 2008

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge